Kathleen A. FARRELL, Lynn Hayden, Katherine
A. Johnson, Julianne M. Kolbeck, Christine J.
Mizgalski, Jane Reilly, Sandra L. Seiler, and
Lori Szymanski, Plaintiffs-Respondents,

v.

State of Wisconsin, LABOR & INDUSTRY
REVIEW COMMISSION, Defendants-
Respondents,

MARATHON COUNTY HANDICAPPED
CHILDREN'S EDUCATION BOARD,
Defendant.

Court of Appeals

*No. 88–1053. Submitted on briefs October 19, 1988.—Decided
November 8, 1988.*

(Also reported in 433 N.W.2d 269.)

For defendant-appellant there were briefs filed by *Robert C. Reed* of Madison.

For the plaintiffs-respondents there was a brief filed by *Randy L. Frokjer* of *Ament & Wulf* of Merrill.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Labor and Industry Review Commission appeals a judgment reversing an unemployment compensation determination it made under sec. 108.04(17), Stats. The issues are whether the employees performed services for or on behalf of a public or nonprofit educational institution and, if so, whether they received reasonable assurance of future employment for the 1986–87 school year. We agree with the commission's determination that the employees were ineligible for unemployment compensation benefits under sec. 108.04(17)(b) and reinstate the commission's order.

The facts are undisputed. The employees are employed by Marathon County Special Education (MCSE), which is part of the Marathon County Handicapped Children's Education Board (MCHCEB) created pursuant to sec. 115.86, Stats. MCHCEB/MCSE was formerly the Marathon County School Consortium's (MCSC) fiscal agent.[1] However, it was replaced as MCSC's fiscal agent by the Wausau School District beginning with the 1986–87 school year.

---

[1]MCSC is an organization composed of twelve school districts drawing most of their students from Marathon County.

The employees held positions as job counselors in the Youth Employability Services program (YES) and the Teen Parenting Program (TPP). These positions are funded through the Job Training Partnership Act (JTPA) in conjunction with the YES program, the Department of Public Instruction, and MCSC. These positions were less than full time and were not performed under a written contract.

All eight claimants were licensed as teachers or teacher's aides. Their job responsibilities consisted of teaching employability skills to economically disadvantaged youths. They also provided prenatal and parenting information to teenage parents.[2] They provided these services through one-on-one counseling and by conducting classes during school hours. These services were generally performed at schools, although sometimes also at homes and work sites.

The employees were laid off at the conclusion of the school year in 1986. Thereafter, they all received two letters from the Wausau School District, the employer's representative, regarding reemployment for the following school year. The first, dated June 24, 1986 (week twenty-six of the benefit period), indicated that the Wausau School District had decided to rehire them to continue as job counselors in the YES program for the 1986–87 school year. Their rate of pay, specific assignments, and beginning dates of employment were to be determined at a later date. The claimants were told to contact Nic Dibble if they would not be returning to work. The letter also indicated that the offer of employment was dependent "upon obtaining a signed agreement" ensuring fund-

---

[2]The Teenage Parenting Program was no longer operating as of the beginning of the 1986–87 school year.

ing from the Private Industry Council, the director of which was responsible for overseeing the distribution of JTPA funds.

The employer's representative sent another letter dated July 3, 1986 (week twenty-seven) to all eight employees. This letter stated that the funding for their positions had been authorized and that it was "in the process of finalizing the performance contract." They were in fact reemployed as job counselors for the 1986–87 school year.

After they were laid off, the employees filed claims for unemployment compensation benefits. Following an investigation of their claims, a DILHR deputy initially concluded that sec. 108.04(17) did not bar the employees from receiving benefits. He allowed the requested benefits by concluding that although the employees were employed by a government unit or nonprofit organization, they did not perform services on behalf of a nonprofit or public educational institution.

The administrative law judge disagreed. She held that sec. 108.04(17)(a) applied to these employees, finding that the employees provided services in an instructional capacity and that they had received reasonable assurance of future employment at the time they were laid off. As a result, she concluded that the employees were not entitled to any benefits.

The commission modified the administrative law judge's decision. The commission concluded that the employees were included in the class of employees defined in sec. 108.04(17)[3] because the services they provided were an integral part of the school districts'

---

[3]While it is not clear whether the commission applied sec. 108.04(17)(a) or (b) this is not important because of our conclusion that subsec. (b) applies here to bar eligibility.

attempt to meet the needs of at-risk students and were performed on behalf of the school districts, even though contracted through a different party. It also concluded that the employees received reasonable assurance of reemployment by the July 3 letter. Consequently, it modified the administrative law judge's decision, allowing benefits for weeks twenty-three through twenty-seven, but disallowing them after week twenty-seven.

The trial court reversed the portion of the commission's decision that denied benefits. It concluded that the employees did not provide services to or on behalf of a nonprofit or public educational institution. It also found that the employees did not receive reasonable assurance of reemployment by the July 3 letter because the offer was contingent on the formal signing of a contract with the Private Industry Council.

No one disputes the fact that the employees were employed by a government unit or nonprofit organization. Rather, the employees argue that the commission erred by determining that they provide services on behalf of a public educational institution because the services they provide are not services normally provided by an educational institution and because they are job counselors rather than traditional instructors. This first issue, which involves the application of a set of facts to a statute, is a question of law. *Wachniak v. Estate of Frank,* 140 Wis. 2d 429, 431, 410 N.W.2d 621, 622 (Ct. App. 1987). In reviewing a trial court's reversal of an administrative agency decision, this court's scope of review is the same as that of the trial court. *Esparza v. DILHR,* 132 Wis. 2d 402, 405, 393 N.W.2d 98, 100 (Ct. App. 1986). While we are not

bound by the commission's determinations on questions of law, we review such determinations with deference, particularly where the commission has the benefit of specialized knowledge and understanding of the statutory scheme which it is charged with administering. *See Leissring v. DILHR,* 115 Wis. 2d 475, 481, 340 N.W.2d 533, 536 (1983).

We conclude that the commission was correct in determining that job counselors who, working on behalf of a group of school districts, provide services that the school district is required by law to provide are "providing services to or on behalf of a nonprofit or public educational institution" within the meaning of sec. 108.04(17)(b).

Section 108.04(17)(b) provides:

> An employe of a nonprofit or public educational institution or an employe of a government unit or nonprofit organization who provides services to or on behalf of such an institution and who performs services other than in an instructional, research or principal administrative capacity, is ineligible for benefits based on such services for any week of unemployment which occurs during a period between 2 successive academic years or terms if such employe performs such services in the first such academic year or term and there is a reasonable assurance that such employe will perform such services in the 2nd such academic year or term.

The employees' argument ignores the language of subsec. (b). Subsection (a) makes employees ineligible if they perform services in an instructional, research, or principal administrative capacity. Subsection (b) excludes eligibility for employees who provide any other services to or on behalf of the educational

institution. Thus, the fact that the employees are not members of the traditional staff does not provide a basis for concluding that sec. 108.04(17)(b) is inapplicable.

Three reasons support our conclusion that these employees provide services to or on behalf of an educational institution. First, they are essentially employed by a group of school districts. While the employees do not always provide these services within a school building or in a formal classroom setting, the services rendered, including individual counseling in the development of career skill plans, were done on behalf of and under the auspices of the school districts.

Second, the programs in which the employees worked are mandated by state law. School districts are directed by statute to have programs and services in place for "children at risk." Sec. 118.153, Stats. (effective July 20, 1985). While this statute does not require the development of new programs or resources, each district is required to identify how such services are to be provided. Furthermore, beginning with the 1986–87 school year, every school board is required to make a program available to children at risk enrolled in the school district. Sec. 118.153(3)(a)1, Stats. In fact, Dibble, the JTPA services coordinator employed by MCSE, testified that the services that the employees provided were part of the districts' compliance with the state statute.

Third, this result is consistent with the commission's determination. Although we ordinarily review questions of law de novo, we will defer to an administrative agency's application of a statute when the agency is charged with the application of that statute. *See Leissring,* 115 Wis. 2d at 481, 340 N.W.2d at 536.

Having determined that these employees are subject to the provisions of sec. 108.04(17)(b), we must next determine at what point the employees received reasonable assurance that they would be employed as job counselors for the 1986–87 school year. This is a mixed question of law and fact; the factual inquiry involves a determination of what information the employees received and when they received it, and the question of law involves a determination as to whether the information received amounted to reasonable assurance of future employment. *See Hemstock Concrete Products, Inc. v. LIRC,* 127 Wis. 2d 437, 439, 380 N.W.2d 387, 389 (Ct. App. 1985).

The term "reasonable assurance" means a written, verbal, or implied agreement that the employee will perform services in the same capacity during the ensuing academic year or term. *Leissring,* 115 Wis. 2d at 487, 340 N.W.2d at 538. The commission rejected the employer's contention that the contents of the June 24 letter constituted reasonable assurance of future employment. The commission determined that the letter, which expressed the employer's intent to hire the employees for the 1986–87 school year, conditioned the offer of employment upon obtaining a signed agreement for funding with the Private Industry Council.

The commission was correct in determining that the June 24 letter did not provide a reasonable assurance of future employment. While the letter contained an offer of employment, the offer was expressly conditioned on the obtaining of an agreement for funding. In the absence of such an agreement, the employees had no assurance that their

positions would exist during the next school year. The letter did not indicate that obtaining funding was a certainty, and the condition placed on the offer provided a sufficient basis for the commission to conclude that the letter did not constitute a reasonable assurance of employment.

Also, the commission correctly determined that the July 3 letter constituted reasonable assurance of employment. The letter stated that the necessary funding had been authorized and that only the administrative execution of a written contract reflecting the agreement of the parties remained uncompleted. All but the ministerial task of signing a written document outlining the funding agreement had been completed as of July 3 and that this was reflected in the July 3 letter sent to all of the employees. Furthermore, the employees believed that this future employment would be substantially similar to that which they had held in past years. Therefore, we reverse the trial court and reinstate the commission's decision and order.

*By the Court.*—Judgment reversed.