Leon BUNKER, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Loyal Public School, Peshtigo School District, Defendants-Respondents.

Court of Appeals

*No. 95–0174. Submitted on briefs September 1, 1995.—Decided October 10, 1995.*

(Also reported in 541 N.W.2d 168.)

608

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *Mary E. Pitassi* and *Bruce Meredith* of *Wisconsin Education Association Council* of Madison.

On behalf of defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *Earl G. Buehler* of Madison.

On behalf of Wisconsin Association of School Boards, Inc., an amicus curiae brief was filed by *Michael Julka* and *Frank C. Sutherland* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Leon Bunker, a school guidance counselor, appeals a judgment affirming a Labor and Industry Review Commission decision holding Bunker ineligible for unemployment compensation (U.C.) benefits during the summer of 1992 because he had a "reasonable assurance of employment" for the next school year with similar terms and conditions within the meaning of § 108.04(17)(a), STATS.[1] After Bunker's

---

[1] Section 108.04(17)(a), STATS., provides in part:

A school year employe . . . is ineligible for benefits based on such services for any week of unemployment which occurs:

1. During the period between 2 successive academic years or terms, if the school year employe performed such services for an educational institution in the first year or term and *if there is reasonable assurance that he or she will perform such services for an educational institution in the 2nd such year or term . . . .* (Emphasis added.)

contract was not renewed in the spring of 1992, he received an offer of employment in a community approximately 180 miles from the community in which he had worked. LIRC decided that this employment offer terminated Bunker's U.C. benefits because location was not a criterion for determining similarity of the terms and conditions of employment under § 108.04(17)(a). The circuit court affirmed LIRC's decision. Because we conclude that location is a condition of employment and jobs that are approximately 180 miles apart are not similar, we reverse LIRC's decision.

The relevant facts are not in dispute. Bunker worked at the Loyal School District from 1988 to 1991. He left Loyal to work in the Peshtigo School District for the 1991-92 school year. Bunker's U.C. benefits were charged against these employers. Peshtigo did not issue Bunker a contract for the 1992-93 school year. After applying for U.C. benefits on June 15, 1992, Bunker received benefits from the week ending June 20, 1992 (week twenty-five) through the week ending July 25, 1992 (week thirty-two).

Bunker interviewed for a full-time position as an elementary school guidance counselor with the Fort Atkinson School District. Fort Atkinson is located approximately 180 miles from Peshtigo, the principal city in the Peshtigo School District, Bunker's former employer. On June 18, 1992 (week twenty-five) a representative of the Fort Atkinson School District informed Bunker that he was the first choice for the job. Bunker turned down the Fort Atkinson job because he hoped to find a job closer to his home. On July 20, 1992, (week thirty-two) Bunker accepted a job closer to his home and his U.C. benefits terminated at that time.

A DILHR deputy reviewed the case and determined that Bunker should not have received U.C.

benefits from weeks twenty-five through thirty-two. The deputy reasoned that Bunker had a reasonable assurance of performing similar services in the next academic year within the meaning of § 108.04(17), STATS., in week twenty-five by virtue of the job offer from the Fort Atkinson School District on June 18, 1992. An administrative law judge and LIRC affirmed the deputy's decision on the grounds that location was not a condition of employment. Bunker initiated an action for judicial review pursuant to §§ 102.23 and 108.09, STATS. The circuit court affirmed LIRC, agreeing that location of a job was not a condition of employment, but rather was a personal circumstance of the employee.

██

We review the decision of LIRC, not the circuit court, and our scope of review is the same as the circuit court. *DILHR v. LIRC*, 155 Wis. 2d 256, 262, 456 N.W.2d 162, 164 (Ct. App. 1990). Under § 102.23(1), STATS., the findings of fact by LIRC, acting within its power shall, in the absence of fraud, be conclusive. *DILHR*, 155 Wis. 2d at 262, 456 N.W.2d at 164. LIRC's legal conclusions are subject to judicial review, and LIRC's statutory construction and application of a statute to a particular set of facts is a question of law. *Cornwell Personnel Assocs. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705, 708 (Ct. App. 1993).

██

We apply three levels of deference to LIRC's conclusions of law and statutory interpretations. *Sauk County v. WERC*, 165 Wis. 2d 406, 413-14, 477 N.W.2d 267, 270 (1991). The highest amount of deference given to an agency's decision is "great weight." We should use the "great weight" standard when LIRC's experience and specialized knowledge aid it in interpreting the

statute, when the agency's interpretation and application of the law is of long standing, or when a legal question is intertwined with factual, value, or policy determinations. *Id.* at 413, 477 N.W.2d at 270. We apply "due weight" to determinations of very nearly first impression, and "no weight" to determinations of first impression. *Id.* at 413-14, 477 N.W.2d at 270-71.

Our issue is one of very nearly first impression. LIRC and our courts have often considered whether jobs with differing wages, benefits and hours constitute similar employment for purposes of § 108.04(17)(a)1, STATS.[2] However, LIRC has not established any instance in which it has encountered the issue of whether location of a job should be considered in the determination of what constitutes similar employment under this statute. Location is distinguishable from the cases dealing with wages, benefits and hours of a job requiring an employee to commute or, especially to move, disrupts the employee's life in ways not easily measured by wages, benefits and hours. Because LIRC's experience interpreting § 108.04(17)(a)1 and its prior applications of that subsection do not relate to a change in location, we give its interpretation due weight, not great weight. "Even though an agency never interpreted a particular statute against facts of first impression, because the agency has prior experi-

[2]*Leissring v. DILHR*, 115 Wis. 2d 475, 340 N.W.2d 533 (1983) (neither a place on a substitute teaching list nor a contract to teach only one hour per day constitutes reasonable assurance of employment for purposes of § 108.04(17)(a), STATS.); *DILHR v. LIRC*, 161 Wis. 2d 231, 245, 467 N.W.2d 545, 550 (1991) (a contract for only fall term of upcoming school year did not constitute adequate assurance of employment for purposes of § 108.04(17)(a)1, STATS.).

ence in interpreting the statute, the agency's decision will be accorded due weight or great bearing." *William Wrigley, Jr. Co. v. DOR*, 160 Wis. 2d 53, 70-71, 465 N.W.2d 800, 806-07 (1991), *reversed on other grounds DOR v. William Wrigley, Jr., Co.*, 112 S.Ct. 2447 (1992).

In *Leissring v. DILHR*, 115 Wis. 2d 475, 340 N.W.2d 533 (1983), the Wisconsin Supreme Court held that the phrase "a reasonable assurance that such employee will perform services in any such capacity" in § 108.04(17)(a), STATS., 1981 was ambiguous.[3] The court developed the following two-prong definition:

> [T]he phrase "reasonable assurance that such employee will perform services in any such capacity" in sec. 108.04(17)(a) applies to a teacher employed fulltime who is laid off at the end of the academic year only if: 1) he or she has a reasonable assurance of performing services the following year in an instructional, research, or principal administrative capacity; *and* 2) if the *terms and conditions* of the employment for the following year are reasonably similar to those of the teacher's employment in the preceding year.

*Id.* at 489, 340 N.W.2d at 539 (second emphasis added).

In both *Leissring* and our case, the offered job met the first prong of this definition. In *Leissring*, the court held that neither a part-time teaching job nor a substi-

---

[3] Our supreme court decided *Leissring v. DILHR*, 115 Wis. 2d 475, 340 N.W.2d 533 (1983), based on § 108.04(17)(a), STATS., 1981. The legislature reworded the phrase "reasonable assurance that such employee will perform services in any such capacity" in that version of § 108.04(17)(a) to "reasonable assurance that he or she will perform such services" in the current version of § 108.04(17)(a). This change in wording is not significant for our purposes.

tute teaching job met the second prong because their terms and conditions of wages, benefits and hours were not "reasonably similar" to the wages, benefits and hours of a full-time teaching job. *Id.* at 489, 340 N.W.2d at 539. The court did not hold or imply that wages, benefits and hours were the only terms and conditions of employment required to be reasonably similar to those of the teacher's employment in the preceding year.[4]

---

[4] After *Leissring v. DILHR*, 115 Wis. 2d 475, 340 N.W.2d 533 (1983), was decided, LIRC released WIS. ADM. CODE § ILHR 132.04. That section provides in part:

(1) SCOPE.

. . . .

The Wisconsin supreme court has ruled that reasonable assurance · exists if the terms and conditions of the employment . . . are reasonably similar to those terms and conditions of employment which existed in the year or term before such weeks.

(2) STANDARD. [With exceptions not relevant here], the terms and conditions of the employment for which the claimant receives assurance from an educational institution under s. 108.04(17) (a), (b) and (c), Stats., for the academic year or term immediately following the weeks of unemployment which occurred between academic years or terms or during an established and customary vacation period or holiday recess are reasonably similar if:

(a) The gross weekly wage is more than 80% of the gross weekly wage earned in the academic year or term which preceded the weeks of unemployment;

(b) The number of hours per week is more than 80% of the average number of hours worked per week in the academic year or term which preceded the weeks of unemployment; and

(c) The employment involves substantially the same skill level and knowledge as the employment in the academic year or term which preceded the weeks of unemployment.

We conclude that this section merely codified the holding of *Leissring* with respect to wages and hours and did not intend to limit the definition of "terms and conditions" to wages, benefits

614

██

We conclude that location of the job is also a condition of employment that must be reasonably similar to the teacher's locale in the preceding year.[5] Changing residences or long commutes often causes social, personal and economic hardships. Bunker acted reasonably to avoid these hardships by searching for and procuring employment in his local labor market. Unemployment compensation benefits were intended for defraying the expenses of such a job search. *Id.* at 490, 340 N.W.2d at 540.

Other areas of employment law do not require an employee to move or commute an unreasonable distance to a job to remain available for U.C. benefits. Section 108.04(7), STATS., provides that an employee generally may not collect benefits in the first four weeks of unemployment if the employee voluntarily terminates employment. Section 108.04(7)(b), provides an exception if the employee voluntarily terminated employment for "good cause." In *Farmers Mill of Athens v. DILHR*, 97 Wis. 2d 576, 294 N.W.2d 39 (Ct. App. 1980), we held that being transferred to a town twenty-five miles away constituted good cause for an employee

and hours. We base our conclusion on the language in the scope of ILHR 132.04 that references the holding of *Leissring* and its failure to make reference to any terms and conditions of employment other than those dealt with in *Leissring*.

[5] Amicus curiae suggest that our holding does not substantially comply with 26 U.S.C. § 3304(a)(6)(A)(i) and therefore jeopardizes federal subsidies for Wisconsin's unemployment compensation program. *See Paynes v. Detroit Bd. of Educ.*, 388 N.W.2d 358 (Mich. App. Ct. 1986). We are not satisfied our result in this case creates a conflict with federal law and therefore find it unnecessary to determine whether change in location is an "economic criterion" under *Paynes*.

voluntarily terminating employment. We reasoned that the expenses involved with a daily round trip fifty-mile commute would cause a significant reduction in monthly take home salary. *Id.* at 581, 294 N.W.2d at 42.

Section 108.04(1)(a)1, STATS., requires an employee to remain "available" for suitable employment to qualify for U.C. benefits. Although Wisconsin courts have not addressed the issue, other jurisdictions have reached the conclusion that a claimant need not accept work outside the local labor market to remain "available" for work, especially if the offered job would require the employee to change residences. *See Curtis v. Mississippi Employ. Sec. Comm'n*, 451 So. 2d 736 (Miss. 1984); *Ruggilo v. Levine*, 380 N.Y.S.2d 104 (1976). The judicial interpretations of § 108.04(7), STATS., and the "available for work" criterion support our conclusion that location must be considered a term and condition of employment.

In *Leissring*, 115 Wis. 2d at 483, 340 N.W.2d at 536, our supreme court declared § 108.04(17)(a), STATS., ambiguous. We are faced with a similar ambiguity here: Is there "reasonable assurance that [an educational employee] will perform such services for an educational institution" when those services are available far from the labor market of his prior employment. Nothing in the language of the statute or the rationale used in cases involving other occupations suggests an intent to discriminate against educational employees.

Because we conclude that Bunker need not accept a job that does not have a reasonably similar location to his preceding employer, we must determine whether the location of the job offer in Fort Atkinson was reasonably similar to the Peshtigo School District. Other

courts, in the context of determining whether distance to be traveled renders an offer of work unsuitable, ask whether it is unusual or uncommon for employees in the claimant's occupation, or in the area in which the claimant resides, for employees to drive the distance in question to work. *South Cent. Bell Tel. Co. v. Mississippi Employment Sec. Comm'n*, 357 So. 2d 312, 315 (Miss. 1978). We conclude that the location of the job offer in Fort Atkinson was not reasonably similar to Bunker's employment in the preceding year.

In conclusion, we hold that the location of offered employment must be reasonably similar to the teacher's employment in the preceding year for the teacher to have reasonable assurance of employment under § 108.04(17)(a)1, STATS. The Fort Atkinson job offer to Bunker was not reasonably similar to his former employment because the new employment required either relocation or an unreasonable commute. Therefore, Bunker is entitled to receive U.C. benefits from weeks twenty-five through thirty-two. The judgment of the circuit court and the decision of LIRC are reversed.

*By the Court.*—Judgment reversed.