**John R. PRICE, Plaintiff,**

v.

**WISCONSIN SERVICES CORP.,
d/b/a Metro Milwaukee Auto
Auction, Defendant.**

No. Civ.A. 98–C–0721.

United States District Court,
E.D. Wisconsin.

July 14, 1999.

William D. Whitnall, Attorney–at–Law, Racine, WI, Willie J. Nunnery, Attorney–at–Law, Madison, WI, for plaintiff.

Scott R. Halloin, Ellen E. Nowak, Mallery & Zimmerman, Milwaukee, WI, Jill M. Wood, Dow, Lohnes & Altertson, Atlanta, GA, for defendant.

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

REYNOLDS, District Judge.

## I. INTRODUCTION

Plaintiff John R. Price ("Price") sued his employer, Wisconsin Services Corp., d/b/a Metro Milwaukee Auto Auction ("MMAA"), for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and 42 U.S.C. § 1981. On March 15, 1999, MMAA moved to dismiss the complaint, arguing that Price: (1) failed to exhaust his administrative remedies, a condition precedent for the Title VII claim; and (2) failed to state a claim under § 1981 for either disparate treatment or racial harassment. The court will grant the motion to dismiss Price's Title VII claim and deny the motion to dismiss Price's § 1981 claim.

## II. BACKGROUND

Price is an African–American, who worked for MMAA between December 7, 1993, and February 12, 1998. He began his employment as an automobile pick-up driver and progressed to a supervisor position. During this period, co-workers repeatedly referred to Price as a "nigger" and other epithets. Price reported this mistreatment to his managers, but they told him that he would simply have to put up with it if he expected to work at MMAA. In 1994, Price complained about these matters to the Equal Employment Opportunity Commission ("EEOC"). This prompted MMAA to give an offending worker one week's suspension with pay— essentially a paid vacation. Judging from MMAA's response to these problems, Price concluded that such mistreatment was indeed a continued condition of his employment.

Nevertheless, Price diligently applied himself at work until January 20, 1998. On that day, a supervisor accused him of making sexual advances to a white, female employee. MMAA conducted an investigation and interviewed two employees who witnessed the interaction between Price and the white female. According to Price, these witnesses provided statements saying that the female was the aggressor and

that Price had directed her to stop her advances. MMAA's manager, however, announced that the two witnesses had actually verified Price's misconduct, and, consequently, the manager terminated him.

On July 29, 1998, Price sued MMAA for racial discrimination in violation of Title VII, the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and 42 U.S.C. § 1981. On March 15, 1999, MMAA filed a motion to dismiss, asserting that the complaint contained four defects. First, Price failed to allege a condition precedent for his Title VII claim—namely, that he had exhausted his administrative remedies. Second, Price failed to state a claim for racial harassment. Third, Price failed to state a claim for disparate treatment under either Title VII or § 1981. And fourth, Price failed to state a claim under § 1981 because he did not have a contractual relationship with MMAA.

## III. DISCUSSION[1]

### A. The Legal Standard for a Motion to Dismiss

This court will grant a motion to dismiss for failure to state a claim if it is clear that the plaintiff would not be entitled to relief even if he could prove the complaint's factual allegations. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must accept the plaintiff's factual allegations as true and draw all reasonable inferences from the pleadings in the plaintiff's favor. *See Gillman v. Burlington N.R.R.,* 878 F.2d 1020, 1022 (7th Cir.1989). However, the court need not ignore facts alleged in the complaint

that undermine the plaintiff's claim or assign weight to unsupported conclusions of law. *See Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). Furthermore, the court must dismiss a complaint if it fails to allege an element which is essential to a claim for relief. *See Cannon v. Univ. of Chicago,* 648 F.2d 1104 (7th Cir.), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981).

### B. The Title VII Claim

MMAA's primary challenge to the Title VII claim is that Price failed to allege a condition precedent. Before filing a Title VII claim, a party must meet a number of prerequisites. *See* 42 U.S.C. § 2000e–5. "First, the party must file a charge with the EEOC within the period of time allotted by the statute. Second, the Commission must issue a right to sue letter." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992). These are not jurisdictional prerequisites, but they are "conditions precedent" with which the plaintiff must comply. Furthermore, Fed. R.Civ.P. 9(c), requires a plaintiff to plead that "all conditions precedent have been performed or have occurred." When a Title VII plaintiff neglects to plead that he has complied with EEOC filing requirements, his complaint is subject to dismissal. *See Perkins v. Silverstein,* 939 F.2d 463, 471 (7th Cir.1991).

Price's complaint makes one passing reference to the EEOC. He alleges that in 1994, he complained of "racially based treatment" to the EEOC and that this accusation prompted MMAA to place an offending worker on a one-week paid vaca-

---

**1.** MMAA argues that the court should dismiss Price's complaint for repeatedly failing to comply with court-ordered deadlines. MMAA's complaints are legitimate. Price has received several extensions to respond to discovery requests. When he finally did respond, many of his answers were simply: "Plaintiff will supplement this interrogatory response." (*See* Resp. Nos. 9–11 in Ex. B to Def.'s Reply Mem. in Supp. of Mot. to Dismiss.) Furthermore, the court's May 11,

1999 order advised Price that failure to serve and file a response to MMAA's motion to dismiss on or before May 24, 1999, would result in dismissal of the action for lack of diligence. Price filed his response on June 1, 1999. Nevertheless, it is the court's policy to decide a case on the merits if at all possible. Since Price ultimately did file a response brief, the court will address the merits of MMAA's motion to dismiss.

tion. But Price continued to work for MMAA up until February 1998, when he was fired. His complaint does not assert that he ever filed a timely EEOC action or that he received a right-to-sue letter. MMAA highlighted this oversight in its motion to dismiss, and Price essentially conceded the point. He responded only with: "[t]he Plaintiff can still raise his racial harassment claim under § 1981." (Pl.'s Resp. to Def.'s Mot. to Dismiss at 4). In short, Price has failed to plead a condition precedent, and therefore, the court must dismiss his Title VII claim.

## C. The Section 1981 Claim

### 1. Failure to Allege the Existence of a Contract

Price's § 1981 claim highlights a bone of contention among federal courts. MMAA contends that Price was an at-will employee and that § 1981 does not protect at-will employees. Price admits that he was an at-will employee and argues that he can maintain a suit under § 1981 in spite of this fact.

Section 1981 guarantees all persons "the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). Initially, courts interpreted this provision as barring discrimination only in the making of a contract, not in the administration or termination of a contract. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 171, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). But then Congress passed the 1991 Civil Rights Act, which supplied a broader definition of the term "make and enforce contracts," and thereby prohibited racial discrimination in almost every aspect of a contract. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1017–18 (4th Cir.1999). The question for this court is whether an at-will employment relationship qualifies as a contract.

Federal courts are split over this issue. Some hold that at-will relationships are not, by definition, contractual because they are terminable at any time for any reason. *See, e.g., Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665 (E.D.N.Y.1997). Others hold that even without a set duration, an at-will employment arrangement can still create enforceable contract rights (i.e., the employee performs specified work in consideration for specified pay). *See, e.g., Spriggs*, 165 F.3d at 1018–19; *Fadeyi v. Planned·Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1049–52 (5th Cir.1998); *Miller v. Reynolds Wheels Int'l*, No. 98–C–755 (W.D.Wis. May 4,·1999).

The Seventh Circuit has not addressed this issue head-on. However, Judge Posner has noted in dicta that "[a] contract for employment at will may end abruptly but it is a real and continuing contract nonetheless, not a series of contracts each a day—or a minute—long." *McKnight v. General Motors Corp.*, 908 F.2d 104, 109 (7th Cir.1990). Recently, the Seventh Circuit (again in dicta) questioned the validity of *McKnight's* reasoning given that it relied on *Patterson*, which Congress essentially overruled when it amended § 1981. *See Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir.1998). Neither *McKnight* nor *Gonzalez* bind this court. *Todd v. Societe Bic S.A.*, 21 F.3d 1402, 1411 (7th Cir.1994) ("No court ... is obliged to treat a dictum of another court (or, for that matter, its own dicta) as binding precedent.") (citing *Northwestern Nat'l Ins. Co. v. Maggio*, 976 F.2d 320, 323 (7th Cir.1992)).

■ The court finds the reasoning in *Miller, Spriggs*, and *Fadeyi* more persuasive. The *Miller* court noted that in Wisconsin, at-will employment contracts are on equal footing with other contracts. *Miller*, No. 98–755, slip op. at 7 (W.D.Wis. May 4, 1999) (citing *Ashleson v. Labor & Indus. Review Comm'n*, 216 Wis.2d 23, 32, 573 N.W.2d 554, 560 (Ct.App.1997)). The *Fadeyi* court pointed out that:

To hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII. *Fadeyi*, 160 F.3d at 1050. For these reasons, the court holds that an at-will employee, like Price, can maintain a discrimination action under § 1981.

### 2. Disparate Treatment

■ Next, MMAA asks the court to dismiss Price's disparate treatment claim under § 1981 for failure to state a claim. To establish disparate treatment, Price must prove that: (1) he is in a protected class; (2) he was performing his job satisfactorily; (3) he was the subject of a materially adverse employment action; and (4) others outside the protected class were treated more favorably. *See Gonzalez*, 133 F.3d at 1032.[2] In particular, MMAA faults Price for failing to allege that MMAA intentionally discriminated against him; that he was performing his job satisfactorily; that he would not have been fired if he were white; and that white employees were treated more favorably than he was.[3] According to MMAA, the following cases require the court to dismiss Price's § 1981 disparate treatment claim because of these deficiencies. *North v. Madison Area Ass'n for Retarded Citizens–Developmental Centers Corp.*, 844 F.2d 401, 406 (7th Cir.1988); *Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 519 (7th Cir.1996); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996).

MMAA neglects to mention that these cases arose from either a directed verdict (*North*) or from a summary judgment mo-

tion (*Pasqua* and *Carson*), where the courts actually had the chance to consider evidence. This case, in contrast, is at the pleadings stage. Here, Fed.R.Civ.P. 8(a) merely requires a "short and plain statement of a claim showing that the pleader is entitled to relief," and Fed.R.Civ.P. 8(e)(1) provides that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Furthermore, "[c]omplaints need not plead law or match facts to every element of a legal theory." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998).

*Bennett* applied these pleading rules to an employment discrimination action in which the plaintiff asserted that the defendant denied her a job because of her race. The defendant moved to dismiss the complaint because the plaintiff failed to allege specific facts—like intentional discrimination—that were necessary for her to prevail at trial. The court rejected this argument and held that plaintiffs are not required to plead facts. The court explained:

> "I was turned down for a job because of my race" is all a complaint has to say. Because success on a disparate-treatment approach ... requires proof of intentional discrimination, a plaintiff might want to allege intent—although this is implied by a claim of racial "discrimination."

*Bennett*, 153 F.3d at 518.

■ Here, Price quite specifically alleged that he was degraded, humiliated, and falsely terminated due to his race and that MMAA's acts were "intentional and deliberate." (Compl.¶¶ 15–16). His § 1981 disparate treatment claim surpasses the *Bennett* standard, and therefore the

---

**2.** The same standards of liability for Title VII apply to § 1981. *See Gonzalez*, 133 F.3d at 1035.

**3.** In support of the latter point, MMAA represents that it also took disciplinary action against the white female employee. On a motion to dismiss, the court may not look

beyond the pleadings. If the moving party submits additional information, the court may convert the proceeding to a motion for summary judgment. Here, however, MMAA makes numerous statements of fact without any evidence to back them up. The court will ignore these unsupported allegations.

court must deny MMAA's motion to dismiss for failure to state a claim.

### 3. Racial Harassment

■ MMAA has also moved to dismiss Price's racial harassment claim for failure to state a claim. In the Seventh Circuit, courts use both an objective and a subjective standard to evaluate claims for racial harassment in a hostile work environment. Specifically, the court must consider "the likely effect of a defendant's conduct upon a *reasonable* person's ability to perform his or her work and upon his or her well-being as well as the actual effect upon the *particular* plaintiff bringing the claim." *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir.1993) (emphasis in original). *See also Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1271–72 (7th Cir.1991). The court must also consider whether the employer knew or should have known about the harassment and failed to take appropriate action. *See Daniels*, 937 F.2d at 1272.[4]

■ MMAA's motion to dismiss contends that "periodic" racial slurs, by definition, are not "severe" and "pervasive" enough to create a hostile or abusive working environment. Furthermore, the complaint "admits" that MMAA took corrective action by suspending an employee for one week with pay. According to MMAA, this admission is fatal because it means that Price cannot prove an essential element of his racial harassment claim.

MMAA's argument here suffers two infirmities. First, MMAA has incorrectly stated and applied the test for racial harassment.[5] Second, again MMAA fails to appreciate the distinction between a motion to dismiss and a motion for summary judgment. At this stage of the litigation, Price must give MMAA notice of the type of claim that he is alleging; he is not required to plead all of the evidence needed to prevail at trial. *See Bennett*, 153 F.3d at 518.

In any event, the Seventh Circuit has recently held that "there is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to liability as a matter of law nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Rodgers*, 12 F.3d at 674. In addition, there is no single act that can more quickly create an abusive working environment than the use of the racial epithet "nigger." *Id.* at 675.

As for MMAA's "corrective action," Price alleged that the one-week paid suspension of an offending worker was a "reward" for racial harassment rather than "punishment" of it. On a motion to dismiss, the court must accept the allegations in the complaint as true. *See Gillman*, 878 F.2d at 1022. Given this requirement, Price has plainly stated a claim for racial harassment under § 1981. Whether he

---

**4.** *Rodgers* and *Daniels* are Title VII harassment cases, not § 1981 harassment cases. However, the Seventh Circuit has stated that the tests for liability under Title VII and § 1981 are the same. *Gonzalez*, 133 F.3d at 1025. *See also, Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 347 n. 2 (7th Cir. 1999) ("Even if we examined the merits of the hostile environment claim, the plaintiff's argument would fail. In analyzing § 1981 claims, we apply the same standards as in Title VII cases.")

**5.** Both the plaintiff and the defendant ask the court to apply a five-part test for racial harassment. In their view, the plaintiff will ultimately have to prove that: (1) he is a member of a protected racial class; (2) he

was subjected to unwelcome or subjectively offensive harassment; (3) the harassment was based upon his race; (4) the harassment was sufficiently severe and pervasive to alter the conditions of his employment and create an objectively hostile or abusive work environment; and (5) his employer knew or should have known of the harassment and failed to take remedial action. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). But the Seventh Circuit Court of Appeals clearly rejected this multi-part test and adopted the two-part objective/subjective standard. *See Daniels*, 937 F.2d at 1271; *Rodgers*, 12 F.3d at 674.

can actually establish the elements of such a claim remains to be seen at summary judgment and/or trial of this case.

## CONCLUSION

Defendant Wisconsin Services Corp., d/b/a Metro Milwaukee Auto Auction's motion to dismiss plaintiff John Price's complaint is **GRANTED IN PART AND DENIED IN PART.** Specifically, the motion to dismiss Price's Title VII claim is **GRANTED,** and the motion to dismiss Price's § 1981 claims is **DENIED.**