STREETER, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents. [Four cases.]

*March 8—April 5, 1955.*

For the appellants there was a brief and oral argument by *M. Michael Essin* of Milwaukee.

For the respondent Industrial Commission there was a brief and oral argument by *Arnold J. Spencer* and *Austin T. Thorson,* both of Madison.

CURRIE, J. Counsel for the four employee plaintiffs contends that the employer could not rely on the provision of the collective-bargaining contract authorizing it to discharge employees who engaged in an unauthorized work stoppage and fail to abide by another clause of the contract which provided for arbitration of discharges. It is counsel's further position that disciplinary discharges for work stoppages are not effective until arbitrated, if arbitration has been requested. It is undisputed that the union did request arbitration of the discharges and that the employer ignored such request.

These contentions require analysis of the applicable provisions of the collective-bargaining agreement in effect between the employer and the union when the work stoppage and walkout occurred. The pertinent article of such agreement provided as follows:

Article XII. No STRIKE OR RESTRICTION OF OUTPUT.

"1. In view of the orderly procedure outlined in this agreement, the union will not authorize or sanction any strike, stoppage, slowdown or restriction of output and the company will not lockout the employees.

"2. There shall be no interference with any reasonable management order, and the work shall proceed as directed, but if the union believes such order to be contrary to any provision of this agreement then the matter may be taken up as a regular grievance.

"3. In case any such action as outlined in paragraphs (1) and (2) shall occur in violation of the above, any or all of the employees taking part will be subject to discipline or discharge.

"4. It is agreed that the union shall retain the right to have any such action by the company submitted to the grievance procedure and to arbitration. The arbitrator will have the authority to pass on the question of back pay as well as all other matters, provided his decision is in line with the applicable clause of this agreement.

"5. The company in sustaining their action shall only have to prove that the disciplined or discharged employee or employees deliberately took part in this action in violation of the above terms of this agreement.

"6. This article will not apply if either party refuses to arbitrate a grievance which the arbitrator rules can be arbitrated under the terms of this agreement, or refuses to abide by the arbitrator's decision providing this refusal is a second demonstration of such action by the same party."

In so far as the effect which arbitration would have on a discharge made by the employer is concerned, we construe the contract as meaning that the discharge is effective until reversed by the arbitrator, and not that the discharge is ineffective until passed upon by the arbitrator. Sec. 6, art. XII of the agreement, has no legal significance with respect to the issue confronting us on this appeal. Its purpose was solely to relieve the union of its "no strike" pledge and the employer of its "no lockout" pledge in the event that an arbitrator should rule that an issue was arbitrable under the agreement and either party refused to arbitrate. It had no relevance to an issue upon which the arbitrator had not acted.

Apparently it is the theory of counsel for the plaintiffs that because the contract was entire and not severable, the employer's breach in refusing arbitration canceled out the employees' prior breach in staging the unauthorized work stoppage and walkout thereby rendering the discharge of the

employees inoperative. We cannot subscribe to such hypothesis. These are not actions to enforce contract rights but proceedings to collect unemployment benefits governed by ch. 108 of the statutes. The only relevancy of the quoted provisions of the contract is to establish whether the plaintiff employees' breach of such contract in staging or instigating the work stoppage and walkout constituted *"misconduct"* within the meaning of such term as used in sec. 108.04 (5) (a), Stats. If such conduct did constitute such *"misconduct,"* then the plaintiffs are barred by reason thereof from recovering unemployment compensation benefits. The pertinent portion of sec. 108.04 (5) (a) provides:

"An employee's eligibility, for benefits based on those credit weeks then accrued with respect to an employer, shall be barred for any week of unemployment completed after:
"(a) He has been discharged by the employer for misconduct connected with his employment; . . ."

The commission has found that the conduct of each of the four plaintiff employees in either instigating or participating in the work stoppage and walkout, or both, constituted *"misconduct"* within the meaning of such statute. There is ample credible evidence, including the provisions of secs. 1 and 5 of art. XII of the collective-bargaining contract, to sustain such finding. Sec. 3 of art. XII of the contract authorized the employer to discharge the employees guilty of such breach of the contract, and the employer exercised such right.

Counsel has cited no authorities which hold that the subsequent breach of contract by the employer in failing to arbitrate the discharges had the effect of retroactively canceling such discharges and reinstating the discharged persons to an employee status. Such a result seems to us so illogical that we would consider adopting it as a governing legal principle only if persuaded by strong and convincing authority so hold-

ing. Our decision in *Dunphy Boat Corp. v. Wisconsin E. R. Board* (1954), 267 Wis. 316, 64 N. W. (2d) 866, points out one remedy open to a discharged employee, or the union which is his collective-bargaining representative, if the employer refuses to arbitrate a discharge as required by its collective-bargaining contract so to do.

There is nothing in the Wisconsin Unemployment Compensation Act which would authorize the commission to delegate to an arbitrator, who was named in, or pursuant to, a collective-bargaining contract, the statutory authority conferred upon the commission to determine whether the conduct of an employee for which he was discharged by his employer constituted *"misconduct"* within the meaning of sec. 108.04 (5), Stats., which would bar such employee from unemployment compensation benefits. It is conceivable that such an arbitrator arbitrating the discharge might find the conduct of the discharged employee to be such as not to have warranted the discharge, while the commission passing on the identical facts would determine that such conduct constituted "misconduct" within the meaning of sec. 108.04 (5). As we construe such statute, the commission is free to make its own decision on such issue independently of the decision of such arbitrator, nor is it required to hold up the processing of an application filed by the discharged employee until arbitration of the discharge has been had.

*By the Court.*—Judgments affirmed.

STEINLE, J., took no part.