162

MARATHON ELECTRIC MANUFACTURING CORPORATION, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*April 9—May 6, 1958.*

For the appellant there were briefs by *Quarles, Herriott & Clemons,* attorneys, and *John G. Kamps, Laurence E. Gooding, Jr.,* and *James A. Urdan* of counsel, all of Milwaukee, and oral argument by *Mr. Gooding.*

For the respondents there was a brief by *Arnold J. Spencer* of Madison, for the Industrial Commission, and oral argument by *Mr. Spencer* and by *Mr. M. Michael Essin* of Milwaukee.

BROWN, J. *Marathon Electric Mfg. Corp. v. Industrial Comm.* (1955), 269 Wis. 394, 69 N. W. (2d) 573, 70 N. W. (2d) 576, gives the facts which underlie the present controversy with the statutory provisions applicable. Such facts and statutes will not be repeated here in detail. In brief,

a union, which was bargaining agent for the factory employees of Marathon Electric Manufacturing Corporation, was pressing the employer corporation for higher wages. While negotiations were going on in this field the union called a meeting of all members of the union to be held off the employer's premises at 2 p. m. on February 28, 1952. This was a time when the first shift of employees,—and only the first shift,—was required to be at work. When the time for the meeting arrived the first-shift employees left their work and attended the meeting. Many second and third-shift employees attended the meeting also.

The second shift was required to report for duty at 3 o'clock p. m. At 2:45 p. m. the employer locked the plant gates so no employees could come in. The gates remained locked for more than two weeks. On February 29th, the day following the union meeting, the employer sent to each factory employee a letter reading:

"Wausau, Wisconsin
"February 29, 1952

"At 2 p. m. on February 28, 1952, the factory employees of Marathon Electric Manufacturing Corporation voluntarily left their jobs in violation of an agreement which was in existence between the union and the company. This agreement provided that 'The union would not authorize or sanction any strike, stoppage, slowdown, or restriction of output and in case any such action should occur, any or all of the employees taking part would be subject to discharge.' Since the action taken by the union and its members Thursday afternoon was the second such violation resulting from irresponsible leadership, the company has no alternative but to consider that all participants have forfeited any rights as employees and are accordingly being removed from the company pay roll. This means that all employee benefits such as group insurance, vacation plans, holiday-pay plans, etc., are being eliminated immediately.

"Since the present union leadership has seen fit for the second time to dishonor written agreements, the company

feels it useless to deal with any such representatives of the employees. The company will only deal with responsible representative groups of employees in the future.

> "Marathon Electric Manufacturing Corporation
> "J. J. Wall, President."

The agreement to which the letter refers contains the following provision:

> "Article XII. No Strike or Restriction of Output.
> "1. In view of the orderly procedure outlined in this agreement, the union will not authorize or sanction any strike, stoppage, slowdown, or restriction of output and the company will not lock out the employees.
> "2. . . .
> "3. In case any such action as outlined in paragraph (1) or (2) shall occur in violation of the above, any or all of the employees taking part will be subject to discipline or discharge."

Forty-three second-shift employees applied for unemployment compensation. This was resisted by the employer and the Industrial Commission conducted a hearing after which it awarded compensation to each such applicant. The award was reviewed by the circuit court for Dane county, which entered a judgment sustaining it. The present appeal is from that judgment.

The appellant has two principal contentions:

(1) Employees who participated in the union activity, whether during their working hours or not, were guilty of misconduct warranting their discharge.

(2) Those who did not participate were not discharged, since the letter of February 29th refers only to participants, and their subsequent unemployment is due to a labor dispute not to discharge.

> "Findings of fact made by the industrial commission in an unemployment compensation case are conclusive on appeal if there is any credible evidence which, if unexplained, would

support such findings. [Sec. 108.09 (7), Stats.]" *Marathon Electric Mfg. Corp. v. Industrial Comm., supra,* at page 394.

In the former *Marathon Case, supra,* we sustained the commission in its finding that the letter of February 29th discharged employees who did not leave work and who did not attend the union meeting. They had not participated in what the employer describes as misconduct. Although now the employer says that the discharge was not addressed to such people, the evidence which was before the commission in the earlier case is before it now by stipulation. At that time President Wall, who signed the letter for the corporation, testified that it terminated the employment of *all* the factory employees. It was so understood by the appellant employer. Locking out all employees warrants the inference that the discharge included all of them, as the president said it did. The record presents substantial evidence supporting that construction. We must hold, as we did in *Marathon, supra,* that the respondent employees were discharged by that letter.

Thus we come to consideration of the company's proposition that the individual respondents were discharged for misconduct.

Was it misconduct on their part to attend a union meeting held away from the employer's premises at a time when their employment did not require them to be at work? We think not. Union officers who called workers off their jobs to attend a meeting were guilty of misconduct, as we held in *Streeter v. Industrial Comm.* (1955), 269 Wis. 412, 69 N. W. (2d) 583. But the present action concerns employees who did not stop work themselves or instigate work stoppage by others. We cannot consider that their attendance at a union meeting such as this is misconduct. Were it otherwise, no employee could attend a union meeting,—indeed no union meeting could be held without misconduct,—when, as here,

the employer employed three shifts working together twenty-four hours a day.

Thus we conclude that attendance at the meeting was not good cause for the discharge of any of the respondents. Neither was the failure of any second-shift person, whether he had been to the meeting or not, to start work at 3 p. m., the usual starting time of their shift, misconduct because before then all of them had been locked out.

A few second-shift employees were awarded employment benefits although they did not attend the hearing before the examiner of the Industrial Commission. Appellant concedes that they were employees but contends there is no evidence that they were discharged. The February 29th letter discharged *all* factory employees which includes these. Having been discharged, if they are to be denied unemployment benefits the burden is on the employer, in rejecting their claims, to assert some valid reason because of which they are disqualified. *Boynton Cab Co. v. Giese* (1941), 237 Wis. 237, 243, 296 N. W. 630. Appellant has no reason respecting them other than those already found to be insufficient. What they did after their employment had been terminated by the company does not affect their right to unemployment benefits. *Marathon Electric Mfg. Corp. v. Industrial Comm., supra.*

We conclude that the evidence gives substantial support to the findings and conclusions of the commission. The circuit court correctly confirmed the decisions of the Industrial Commission.

*By the Court.*—Judgment affirmed.

HALLOWS, J., took no part.