A. J. SWEET OF LA CROSSE, INC., and others, Appellants, v. INDUSTRIAL COMMISSION and others, Respondents.*

*February 8—March 6, 1962.*

* Motion for rehearing denied, without costs, on May 1, 1962.

99

101

103

For the appellants there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp,* and oral argument by *Quincy H. Hale* and *Joseph D. Becker,* all of La Crosse.

For the respondent Industrial Commission there was a brief by *Arnold J. Spencer,* chief counsel of the unemployment compensation division, and *Ralph E. Kline* of Madison, and oral argument by *Mr. Spencer.*

CURRIE, J.  Sec. 108.04 (10), Stats., of the Wisconsin Unemployment Compensation Act, provides:

*"Labor dispute.* An employee who has left (or partially or totally lost) his employment with an employing unit because of a strike *or other bona fide labor dispute* shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other *bona fide* labor dispute is in active progress in the establishment in which he is or was employed." (Italics supplied.)

The statutory words "other *bona fide* labor dispute" are broad enough to embrace those which culminate in lockouts. The commission has consistently, over a period of at least the past twenty-three years, interpreted this statute as disqualifying from benefits those employees who have lost time from work due to a lockout precipitated by a *bona fide* labor dispute.[1] The unemployment compensation laws of nine other

---

[1] Commission appeal tribunal decisions so holding are 39–A–161, 46–A–617, 53–A–930, 56–A–457, 59–A–100, and 59–A–2363. (The figures preceding the A's are the years in which these decisions were rendered; *e.g.,* decision 39–A–161 was rendered in 1939.) See 1960 Digest of Wisconsin U. C. Cases, pp. 163–165, 178.

states specifically exclude lockouts from labor disputes which disqualify employees from benefits,[2] but our legislature has not seen fit so to provide.

It is conceded that a labor dispute was in progress between the union and the five plaintiff employers, over the changes the union desired to have made in the collective-bargaining contracts, at the time the employers locked out the employee members of the union. The crucial issue on this appeal is whether this labor dispute was *bona fide* within the meaning of the statute. Since resolving this issue involves the construction of the agreement between the parties, this presents an issue of law for the court, rather than an issue of fact upon which the commission's finding would have to be upheld if any reasonable view of the evidence supported it.

Both the commission and the circuit court determined that loss of work by the claimant employees was not due to a *bona fide* labor dispute because the lockout by the employers constituted a violation of the then existing collective-bargaining agreements. The briefs of the parties cite no decisions by this court which have passed upon the question of which types of labor disputes are *bona fide* and which are not. The commission's brief does cite a 1939 Dane county circuit court decision [3] and a 1959 appeal tribunal decision [4]

---

[2] Arkansas, Connecticut, Kentucky, Minnesota, Mississippi, New Hampshire, Ohio, Pennsylvania, and West Virginia. See Comparison of State Unemployment Insurance Laws as of January 1, 1960, U. S. Department of Labor pamphlet, BES No. U–141, p. 103.

[3] This decision was rendered by the late Judge ALVIN C. REIS in *Lullabye Furniture Corp. v. Industrial Comm.* and is abstracted in 1960 Digest of Wisconsin U. C. Cases, pp. 161, 162. In that case employees struck in violation of a no-strike clause in a labor contract, and after the strike was over the employer failed to call back to work part of the strikers. Cf. *Streeter v. Industrial Comm.* (1955), 269 Wis. 412, 69 N. W. (2d) 583.

[4] No. 59–A–1802, abstracted in 1960 Digest of Wisconsin U. C. Cases, pp. 164, 165, and rendered in an unemployment compensation proceeding wherein employees of Allied Heating Company and three other employers sought benefits for time lost from work due

which held that a labor dispute culminating in a strike or lockout, which violates the terms of a collective-bargaining agreement, is not a *bona fide* labor dispute within the meaning of sec. 108.04 (10), Stats. However, the only basis here advanced for determining that the labor dispute, which resulted in loss of days of employment to the claimant employees was not *bona fide,* is that the lockout was a violation by plaintiff employers of their collective-bargaining contracts with the union. Therefore, if such lockouts did not constitute a breach of contract, it is conceded that such labor dispute was *bona fide.*

The instant collective-bargaining contracts contained no express language prohibiting either strikes or lockouts during their term. However, both the commission and the circuit court held that under the wording of the preamble and automatic-renewal clause of the contracts such a prohibition arose by implication. Preambles and automatic-renewal clauses worded similarly to those of the instant contracts have been in fairly common use for some time. In view of this, we consider it significant that no cases have been cited to this court to sustain such a holding.

While the point is not raised by respondent commission's brief, we have also given consideration to whether a no-strike, no-lockout clause can be implied from the inclusion of an arbitration provision as the final step in the grievance procedure set forth in the contracts. This is because, as stated by the United States supreme court in *Textile Workers Union v. Lincoln Mills* (1957), 353 U. S. 448, 455, 77 Sup. Ct. 912, 1 L. Ed. (2d) 972, an agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. The labor contract in the *Lincoln Mills Case* con-

---

to a lockout. The appeal tribunal found that the lockout was a violation of the collective-bargaining agreement and, therefore, that the labor dispute was not *bona fide,* citing Judge REIS' opinion in the *Lullabye Furniture Corp. Case.*

tained both a clause for the arbitration of grievances and also one prohibiting strikes or work stoppages, and thus that decision is not an authority which holds that a no-strike, no-lockout clause can be implied from a clause requiring the arbitration of grievances. However, the following federal cases have implied no-strike clauses from provisions in the labor contracts providing for the arbitration of grievances. *Lewis v. Benedict Coal Corp.* (6th Cir. 1958), 259 Fed. (2d) 346; *International Brotherhood v. W. L. Mead, Inc.* (1st Cir. 1956), 230 Fed. (2d) 576; *United Construction Workers v. Haislip Baking Co.* (4th Cir. 1955), 223 Fed. (2d) 872; *Gay's Express, Inc., v. International Brotherhood* (D. C. Mass. 1959), 169 Fed. Supp. 834. Contra, *International Union, United Mine Workers v. National L. R. Board* (D. C. Cir. 1958), 257 Fed. (2d) 211.

An examination of the four above-cited federal cases, in which no-strike clauses were implied from the contract clauses requiring arbitration of grievances, discloses that there is a marked difference between the wording of those arbitration clauses and the clause included in the instant contracts. The contract in the *Benedict Coal Corp. Case* required that all disputes be "settled exclusively" by the outlined grievance procedure or "by the full use of free collective bargaining." The grievance-procedure clause provided that the "decision of the umpire shall be final." In the *W. L. Mead, Inc., Case,* the arbitration article provided that the machinery therein set forth "shall be the exclusive means of adjudicating all matters." The court's determination therein limited the implied no-strike provision to matters appropriate to be arbitrated under the terms of the contract. The portion of the arbitration clause quoted in the *Haislip Baking Co. Case* is substantially the same as the one in the *W. L. Mead, Inc., Case.* The dispute that led to the strike in the *Haislip Baking Co. Case* grew out of the suspension or discharge of two workers; this dispute was of the type

clearly required to be submitted to arbitration. The labor contract in the *Gay's Express, Inc., Case* required that any dispute concerning the application or interpretation of the contract which could not be resolved between the employer and the union be referred to the general grievance committee and its decision was "to be final and binding upon both parties." The union called a strike because the employer had discharged one of the employees in the bargaining unit.

The instant labor contracts lack any provision making the arbitrators' decision of a grievance dispute final or binding upon both the employers and the union. Nor do they state that resort to the grievance procedure is to be the exclusive method of settling grievances, although this might be implied. Here the dispute which precipitated the lockouts was not one subject to the grievance procedure but was over the union's demands for changes in the contracts. We do not deem that any implied no-strike, no-lockout clause in a labor contract, resulting from the inclusion of an arbitration clause, should extend to disputes which are not expressly made subject to arbitration. Therefore, the arbitration provision in the instant contracts does not give rise to an implied no-strike, no-lockout clause extending to the particular dispute between the parties over new contract terms, which precipitated the lockouts. Whether a no-strike clause can be implied coextensive with the coverage of the instant grievance procedure is not before this court, and we express no opinion on such issue.

Turning again to the preamble and the automatic-renewal clause of the instant contracts, we find no express provision that specifies that peaceful negotiation between the parties is to be the *exclusive* method of resolving any differences arising over demands of the union for changes in the contract.

The preamble contains only a general statement relating to the parties' desire for labor peace, but no express prohibi-

tion of strikes and lockouts. The basic purpose of every labor contract is to attempt to preserve labor peace. This is also the purpose of state and federal statutes relating to collective bargaining. Though premised on such a socially desirable purpose, the instant general words cannot be said to imply the existence of as significant a provision as a no-strike, no-lockout clause, particularly where they are found only in the preamble and are not repeated in the body of the contracts.

Moreover, we fail to perceive in the automatic-renewal clause any provision which compels the implication that the parties yielded their rights to strike or lockout. This clause merely provided the procedure for alteration and termination of the contract. Failure to follow such procedure continued the contract "in full force and effect." Clearly, this language does not prohibit strikes and lockouts or even provide that resort to either will terminate the contract. Absent such an express provision, the contracts continued despite the strike and lockout.

Furthermore, if the parties intended to bar each other from resort to a strike or lockout it would seem reasonable that the contracts would have so stated. To hold that such a clause is implied from the wording of the instant contracts would ignore the realities that take place in the hammering out of the terms of a labor contract through collective bargaining. The right to strike is the most-effective weapon a union possesses in dealing with employers and it is not reasonable to imply that this weapon has been yielded in the absence of either express language to that effect, or contract wording which states that some other method of procedure is to be the exclusive method of resolving differences. A no-lockout clause is a concomitant of a no-strike clause and, if the former is not to be implied, neither is the latter.

However, we doubt if a promise is ever to be imported into a contract by implication where the parties by acts of

practical construction have negatived such an interpretation. This is because if it is necessary, in interpreting a written contract, to resort to implication in order to find a particular unstated promise, the written agreement is ambiguous in this respect. In such a situation a court ordinarily will place the interpretation upon the terms of the contract which the parties by their conduct have adopted. *Cutler-Hammer, Inc., v. Industrial Comm.* (1961), 13 Wis. (2d) 618, 632, 109 N. W. (2d) 468; *George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.* (1945), 246 Wis. 558, 574, 18 N. W. (2d) 468. See also 3 Williston, Contracts (rev. ed.), p. 1792, sec. 623.

We have present here two acts of the union which negative the existence of a no-strike, no-lockout clause. The first was the giving to W.E.R.B. of the ten-day notice of intention to strike each of the six employers. The second was the calling of the strike against Ed. Phillips & Sons approximately three weeks later on June 1, 1959. There is nothing in the record to indicate that the union considered it was breaching its contracts in so doing, or that any of the employers then advanced any claim that a violation of the contracts had occurred.

For the reasons heretofore stated, we interpret these contracts as not containing any implied promise either that the union would not resort to a strike to enforce its demands for contract changes, or that the employers would not utilize the device of a lockout in resisting such demands. It necessarily follows that the claimant employees' loss of time from work, for which they seek unemployment compensation benefits, was due to a *bona fide* labor dispute within the meaning of sec. 108.04 (10), Stats.

The employers contend that, irrespective of whether the labor contracts were construed to impliedly prohibit strikes and lockouts, the calling of the strike against Ed. Phillips & Sons, Inc., constituted an act which entitled the other five

employer members of the association to lock out their employees in self-protection. They point out that where one union negotiates with a group of employers it is a common union tactic to call a strike against the weakest member of the group for the purpose of forcing him to either make concessions or lose customers to other members of the association. Some federal cases have recognized the right of nonstruck association members to lock out their employees during the pendency of the strike to prevent such "whipsawing" tactics. *National L. R. Board v. Truck Drivers Union* (1957), 353 U. S. 87, 77 Sup. Ct. 643, 1 L. Ed. (2d) 676; *Leonard v. National L. R. Board* (9th Cir. 1953), 205 Fed. (2d) 355. Both the commission and the circuit court ruled adversely to this contention for reasons stated in their memorandum opinions. Because of our conclusion, that the labor contracts did not impliedly prohibit strikes or lockouts in connection with the instant labor dispute, we find it unnecessary to pass on this further issue.

*By the Court.*—Judgment reversed; cause remanded with instructions to set aside the decision of the commission.

The following memorandum was filed May 1, 1962:

PER CURIAM (*on motion for rehearing*). The day prior to the handing down of our original opinion herein, the United States supreme court decided *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.* (1962), 369 U. S. 95, 82 Sup. Ct. 571, 7 L. Ed. (2d) 593. This case involved an action in a state court in Washington to recover damages against a union for a strike which, it was alleged, breached a collective-bargaining contract. The court affirmed the judgment below in favor of the employer.

The collective-bargaining contract contained no express clause prohibiting strikes or lockouts, but the dispute which

led to the strike was one which the contract required to be submitted to final and binding arbitration. The court held that there was an implied covenant in the contract which prohibited a strike under such circumstances. However, the significant portion of the opinion, in so far as the instant case is concerned, is contained in this sentence (369 U. S. p. 106):

"What has been said is not to suggest that a no-strike agreement is to be implied beyond the area which it has been agreed will be exclusively covered by compulsory terminal arbitration."

We expressly pointed out in our original opinion herein that the union's demands upon the employers for changes in the contracts were not subject to the arbitration clause of the contracts. The commission's brief on rehearing presents no new arguments which cause us to doubt the soundness of any of the points decided in our original opinion. The only ground upon which the commission determined that the lockout was not precipitated by a *bona fide* labor dispute was that it was held to violate an implied no-strike, no-lockout clause of the collective-bargaining contracts. However, we deem it advisable to point out that there may be situations in which a lockout would not qualify as a *bona fide* labor dispute, even though it did not constitute a breach of contract on the part of the employer.

The motion for rehearing is denied without costs.