Todd W. Brauneis, Gregory C. Decleene, Eugene M. Kapitanski, Joel Brunton, Thomas Doege, Thomas Geboy, Peter J. Holmes, Robert Koleta, James McLaughlin, Jr., Rudy Ramos, John E. Schaller, Craig F. Ford, Ronald J. Mielke, Paul J. O'Leary, James S. Rehfeldt, Robert D. Sumter, Jerome P. Pytlik, Russell P. Fahn, Donald J. Hesse, Dale Kopacz, Alan M. Kuhn, John J. Bosmans, James A. Krznarich, Ronald F. Mamayek, William H. Neider, John L. O'Leary, Carl W. Pennewell, Charles R. Novak, Jason A. Nimmer, James D. Pfeifer and Jeffrey T. Vogt, Petitioners-Respondents,

v.

State of Wisconsin, Labor and Industry Review Commission, Respondent-Appellant,

The Illingworth Corporation, Respondent-Co-Appellant.

Supreme Court

*No. 98–2212. Oral argument May 25, 2000.—Decided June 27, 2000.*

(On certification from the court of appeals.)

## 2000 WI 69

(Also reported in 612 N.W.2d 635.)

28

For the respondent-appellant there were briefs (in the court of appeals) and oral argument by *William W. Cassel*, Labor and Industry Review Commission.

For the respondent-co-appellant there were briefs (in the court of appeals) by *Jere W. Wiedenman* and *Buchanan & Barry, S.C.*, Milwaukee, and oral argument by *Jere W. Wiedenman*.

For the petitioners-respondents there was a brief by *Matthew R. Robbins, Jill M. Hartley* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, Milwaukee, and oral argument by *Matthew R. Robbins*.

¶ 1.   N. PATRICK CROOKS, J.   This appeal is before this court on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61.[1] The State of Wisconsin Labor and Industry Review Commission (LIRC) and The Illingworth Corporation (Illingworth) appeal an order of the circuit court for Milwaukee County, Jacqueline D. Schellinger, Judge, reversing LIRC's unemployment compensation decision. The circuit court determined that Illingworth's act of barring employees from work constituted a lockout pursuant to Wis. Stat. § 108.04(10)(d).[2] We agree that Illingworth's conduct was a statutory lockout and, accordingly, Petitioners-Respondents are entitled to unemployment compensation. We therefore affirm the circuit court's decision.

---

[1] Wisconsin Stat. § (Rule) 809.61 provides in relevant part:

The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion.

All future references are to the 1997–98 Statutes unless otherwise indicated.

[2] Wisconsin Stat. § 108.04(10) provides in relevant part:

(a)   An employe who has left or partially or totally lost his or her work with an employing unit because of a strike or other bona fide labor dispute, other than a lockout, is not eligible to receive benefits based on wages paid for employment prior to commencement of the dispute for any week in which the dispute is in active progress in the establishment in which the employe is or was employed. . . .

(d)   In this subsection, "lockout" means the barring of one or more employes from their employment in an establishment by an employer as a part of a labor dispute, which is not directly subsequent to a strike or other job action of a labor union or group of employes of the employer. . . .

## I.

¶ 2. The Petitioners-Respondents, Todd W. Brauneis and co-workers, were Illingworth employees.[3] They worked as sheet metal workers for Illingworth at its Milwaukee facility. They are members of Local 18 of the Sheet Metal Workers' International Association (Local 18 or the union) which represents them in collective bargaining.

¶ 3. Illingworth is a member of the Sheet Metal and Air Conditioning Contractors' Association (Association) which bargains collectively on behalf of Illingworth and other Association members. The Association members agree to be bound by the Association's actions concerning negotiations with the union, including instructions and directives regarding concerted action.

¶ 4. During the relevant time period, there was a 1993–1996 collective bargaining agreement between the Association and Local 18 that had expired. At issue during the negotiations was compensation for "addendum workers" or those workers covered by an addendum to the collective bargaining agreement. Construction Supply & Erection (CS&E), also an Association member, employed the largest number of Local 18 addendum workers in the Milwaukee area.

¶ 5. On Friday, June 7, 1996, Local 18 went on strike against CS&E. Local 18 chose CS&E as the strike target because of the large numbers of addendum workers it employed. On Tuesday, June 11, 1996, the Association directed its members to inform Local 18 employees that they were locked out. Some Association members did not participate in the lockout.

---

[3] They are collectively referred to herein as "Petitioners-Respondents."

¶ 6. Illingworth participated in the lockout. During week 24 of 1996, Illingworth locked out Petitioners-Respondents. However, Local 18 did not go on strike against Illingworth. The union did not go on strike against any other Association member.

¶ 7. On June 14, 1996, the Association notified its members that a tentative agreement had been reached with the union. The strike against CS&E and the Association-directed lockout ended on Monday, June 17, week 25 of 1996.

¶ 8. Although Illingworth and CS&E both employ members from the Local 18 union and some members may work at both companies, the companies are entirely separate businesses. Illingworth's business involves sheet metal fabrication, installation and maintenance. CS&E specializes in steel fabrication, decking and siding. Illingworth and CS&E have separate ownership and management and operate out of separate facilities.

¶ 9. Petitioners-Respondents applied for unemployment compensation benefits for the time that they were locked out of Illingworth during week 24 of 1996. The Department of Industry, Labor and Human Relations determined that Petitioners-Respondents were entitled to unemployment compensation for the time they had been locked out, since they had not lost their employment due to a strike or bona fide labor dispute at their own facility.[4]

---

[4] The Department of Industry, Labor and Human Relations is now known as the Department of Workforce Development. The legislature renamed the Department of Industry, Labor and Human Relations the Department of Industry, Labor and Job Development, effective July 1, 1996. However, the Department was given the option to use the name Department of Workforce Development which it did. The legislature recog-

¶ 10.   Illingworth appealed this initial determination to the Appeal Tribunal, an Administrative Law Judge (ALJ) for the Division of Unemployment Insurance of the Department of Workforce Development. The ALJ affirmed, finding that Illingworth and CS&E were separate legal entities, and therefore separate establishments within the meaning of Wis. Stat. § 108.04(10). The ALJ also found that Petitioners-Respondents did not leave or lose their employment because of a strike or other bona fide labor dispute in active progress with the establishment in which they were employed and granted them the unemployment compensation benefits they sought.

¶ 11.   Illingworth petitioned LIRC to review the ALJ's decision. LIRC reversed the ALJ's ruling and held that the employees were not entitled to unemployment compensation benefits. In addition to relying upon the findings of fact related above, LIRC found that the purpose of the union's strike was to exert pressure on all the Association members to acquiesce to the union's bargaining position. Unemployment Compensation Decision, Hearing No. 96606892MWG (Aug. 20, 1997) (R. at 19:13). LIRC termed the strike a "selective strike." *Id.* LIRC concluded that Illingworth's action was not a lockout under Wis. Stat. § 108.04(10)(d) because it "was a direct reaction to the selective strike." *Id.* LIRC also concluded that there was an active labor dispute at the establishment where Petitioners-Respondents worked, Illingworth's lockout.[5]

_____

nized the name change in 1997. *Wisconsin Blue Book 1999–2000* 493 (Wisconsin Legislative Reference Bureau ed., 1999).

[5] We do not address LIRC's additional inquiry whether the Department of Workforce Development had waived recovery of overpaid benefits to employees since our decision is that the employees are entitled to the benefits and none were thus over-

¶ 12. Petitioners-Respondents appealed LIRC's decision to the circuit court. The circuit court reversed, finding that there was no strike against the Association or Illingworth based upon the statutory definitions of employee, employment and strike. The circuit court also found the phrase "subsequent to a strike or other job action of a labor union or group of employes[6] of the employer" in Wis. Stat. § 108.04(10)(d) ambiguous. According to the court, a reasonable interpretation that would effect the statutory purpose that an employer not finance a strike against it is that the "or" distinguishes between union members and non-union employees who may strike. Correspondingly, the court held that Illingworth's action was a statutory lockout because it was not subsequent to a strike against itself.

¶ 13. LIRC and Illingworth appealed the circuit court's decision. The court of appeals certified this appeal and we accepted the certification.

II.

¶ 14. Here, we review the decision of LIRC, not the circuit court's decision. *Bunker v. LIRC*, 197 Wis. 2d 606, 611, 541 N.W.2d 168 (Ct. App. 1995) (citing *DILHR v. LIRC*, 155 Wis. 2d 256, 262, 456 N.W.2d 162 (Ct. App. 1990)). LIRC's findings of fact are upheld if they are supported by substantial and credible evidence. *Hagen v. LIRC*, 210 Wis. 2d 12, 23, 563 N.W.2d 454 (1997). Here, we uphold most of LIRC's findings.

paid. The issue was not raised by Petitioners-Respondents, or Respondent-Appellant LIRC, or Respondent-Co-Appellant Illingworth.

[6] The legislature uses the alternative spelling of "employee." We use the more generally accepted version. *See* THE AMERICAN HERITAGE DICTIONARY 450 (2d College ed. 1985).

However, there is no evidentiary support for its finding that the purpose of Local 18's strike was to pressure all Association members into acquiescing to its bargaining position. The only evidence of intent is that the union targeted CS&E because it employed the largest number of addendum workers, and the addendum workers were an issue during the negotiations. Unemployment Compensation Decision, Hearing No. 96606892MWG (Aug. 20, 1997) (R. at 19:10). According to LIRC's findings, Local 18 did not suggest to the Association that other contractors would be targeted, even though the union did not assure the Association that it would not strike other contractors. (R. at 19:12). However, Local 18 did not strike any other Association member. Given that LIRC's finding regarding the intent of the union's strike is not supported by substantial evidence, we will disregard that finding.

■

¶ 15.   LIRC's statutory construction and application of that construction to the facts, is, as any legal conclusion, a question of law subject to judicial review. *Trinwith v. LIRC*, 149 Wis. 2d 634, 640, 439 N.W.2d 581 (Ct. App. 1989); *Bunker v. LIRC*, 197 Wis. 2d at 611. Even though we are not bound by LIRC's statutory interpretation, we consider whether the circumstances of the case warrant deference to its interpretation. "This court has identified three distinct levels of deference granted to agency decisions: great weight deference, due weight deference and de novo review." *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996) (citation omitted).

¶ 16.   LIRC contends that we should grant great weight deference to its interpretation of Wis. Stat. § 108.04(10).[7] We disagree.

> Great weight deference is appropriate once a court has concluded that: (1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995).

¶ 17.   LIRC's interpretation here of Wis. Stat. § 108.04(10) is not one of long-standing. LIRC has long interpreted and applied Wis. Stat. § 108.04(10). *Trinwith*, 149 Wis. 2d at 640; *Hemstock Concrete Prod., Inc. v. LIRC*, 127 Wis. 2d 437, 380 N.W.2d 387 (Ct. App. 1985); *Jenks v. DILHR*, 107 Wis. 2d 714, 321 N.W.2d 347 (Ct. App. 1982). However, there is no indication that LIRC has previously addressed whether employees are eligible for unemployment compensation where an employer locks out those employees who are members of a union because the union is striking another employer with which the employee's employer is associated. Also, as shown herein, LIRC's interpretation of Wis. Stat. § 108.04(10) does not promote uniform or consistent application. Consequently, the circumstances here do not warrant great weight deference.

¶ 18.   Petitioners-Respondents contend that LIRC's decision should be accorded no weight, at the

---

[7] Illingworth joins LIRC's contention that great weight deference should be accorded to LIRC's decision.

other end of the review spectrum. We disagree with this posture also. *De novo* review applies where "there is no evidence that the agency has any special expertise or experience interpreting the statute." *DILHR v. LIRC*, 161 Wis. 2d 231, 246, 467 N.W.2d 545 (1991). *De novo* review also applies "when the issue before the agency is clearly one of first impression, or when the agency's position on an issue has been so inconsistent so as to provide no real guidance." *UFE, Inc.*, 201 Wis. 2d at 285 (citations omitted). Even though the circumstances here may be novel, LIRC has both special expertise and experience in interpreting Wis. Stat. § 108.04(10). *De novo* would thus be inappropriate.

¶ 19.   This is precisely the situation that warrants due weight deference: LIRC has had some experience interpreting Wis. Stat. § 108.04(10), yet has not faced the particular circumstances we have here. "Even though an agency never interpreted a particular statute against facts of first impression, because the agency has prior experience in interpreting the statute, the agency's decision will be accorded due weight or great bearing." *Bunker*, 197 Wis. 2d at 612–13 (quoting *William Wrigley, Jr., Co. v. DOR*, 160 Wis. 2d 53, 70–71, 465 N.W.2d 800 (1991), *rev'd on other grounds, DOR v. William Wrigley, Jr., Co.*, 505 U.S. 214 (1992)). Indeed, where, as here, an agency "has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court," due weight is the "appropriate" deference. *UFE, Inc.*, 201 Wis. 2d at 286.

¶ 20.   Pursuant to due weight deference, an agency's statutory interpretation is accorded some weight, but is not conclusive. So long as the agency's

interpretation is reasonable *and* complies with the statute's purpose, a court will not overturn it. *UFE, Inc.*, 201 Wis. 2d at 286–87. "[H]owever, the fact that the agency's interpretation is reasonable does not mean that its interpretation will necessarily be upheld. If a court finds an alternative interpretation more reasonable, it need not adopt the agency's interpretation." *Id.* at 287. Here, this court finds an alternative interpretation, one more reasonable than LIRC's. Also, unlike LIRC's interpretation, our interpretation fulfills the intent of the statute.

### III.

¶ 21.  The lodestar of statutory interpretation is discerning the intent of the legislature. *Milwaukee County v. DILHR*, 80 Wis. 2d 445, 451, 259 N.W.2d 118 (1977). In looking for legislative intent, we start with the language of the statute. *UFE, Inc.*, 201 Wis. 2d at 281; *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). "While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute." *Alberte v. Anew Health Care Serv., Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987)). If the plain meaning of the statute is self-evident, we look no further. *UFE, Inc.*, 201 Wis. 2d at 281. Where a statute is ambiguous, i.e., "reasonable minds could differ as to its meaning" (*Harnischfeger Corp.*, 196 Wis. 2d at 662), the court examines further the scope, history, context, subject matter and purpose of the statute in question. *UFE, Inc.*, 201 Wis. 2d at 282.

¶ 22. "A benefit claimant is presumed eligible for [unemployment compensation] benefits and the party (the employer here) resisting payment of benefits has the burden of proving that the case comes within the disqualifying provision of the law. . . ." *Kansas City Star Co. v. DILHR*, 60 Wis. 2d 591, 602, 211 N.W.2d 488 (1973). The pertinent disqualifying provision is Wis. Stat. § 108.04(10). According to Wis. Stat. § 108.04(10)(a), an employee who has partially lost his or her work due to a strike or other bona fide labor dispute—other than a lockout—is not eligible to receive unemployment compensation benefits. A lockout is defined by Wis. Stat. § 108.04(10)(d).

¶ 23. LIRC contends that the definition of lockout does not include what it terms a defensive lockout, or a lockout in response to a selective strike or whipsaw strike that begins with one employer to pressure associated employers into acceding to the union.[8] Section 108.04(10)(d) indicates that a lockout does not include barring employees from employment in the employer's establishment that is "directly subsequent to a strike or other job action of a labor union or group of employ-

---

[8] Whipsaw strike refers to "whipsawing" which is a tactic used by unions to strike "one at a time" employers of a multi-employer bargaining unit. *NLRB v. Truck Drivers Local Union No. 449*, 353 U.S. 87, 90 n.7 (1957); *see also A.J. Sweet v. Industrial Comm'n*, 16 Wis. 2d 98, 110a, 114 N.W.2d 853 (1962). In its decision, LIRC uses, but does not define, the term selective strike. However, its decision indicates that the strike's purpose was the same as that of a whipsaw strike, i.e., to pressure all Association members to acquiesce to the union. *Id.*; Unemployment Compensation Decision, Hearing No. 96606892MWG (Aug. 20, 1997) (R. at 19:13). On appeal, LIRC refers to Local 18's strike as a "whipsaw action" or "whipsaw strike," as well as "selective strike."

ees of the employer." It is not clear from the plain language whether the term employer in the lockout definition encompasses a multi-employer bargaining unit. Both LIRC and Illingworth maintain that it does.

¶ 24. Reasonable minds could differ as to whether the term employer in the statute is limited to a single employer or extends to an association of employers. LIRC argues that the Association should be considered the employer.[9] However, employees are defined as those performing services (Wis. Stat. § 108.02(12)); employment means service by an individual for pay (Wis. Stat. § 108.02(15)). There is no evidence that the Association is an employer insofar as it employs Petitioners-Respondents or CS&E's employees. Consequently, we do not find the definition of employer helpful in determining whether Wis. Stat. § 108.04(10)(d) includes a multi-employer bargaining unit.

¶ 25. Reasonable minds could find that the term employer means either a single or multiple employer. Since reasonable minds could differ, we find Wis. Stat. § 108.04(10)(d) ambiguous. *See Harnischfeger Corp.*, 196 Wis. 2d at 662. *But see Trinwith v. LIRC*, 149 Wis. 2d at 642.[10] Given that the subsection is ambiguous, we turn to "extrinsic aids" to interpret the statute,

---

[9] Section 108.02(13)(a) provides in pertinent part that " 'Employer' means every government unit and any person, association. . . . "

[10] In *Trinwith*, the court concluded that Wis. Stat. § 108.04(10)(c), now subsection (d), was not ambiguous insofar as the term "barring" does not include a constructive lockout. *Trinwith v. LIRC*, 149 Wis. 2d 634, 643–644, 439 N.W.2d 581 (Ct. App. 1989). "We conclude that the legislature clearly intended that an employer lock an employee out of the establishment as a result of a dispute." *Id.* at 643.

starting with the legislative history.[11] *Milwaukee County*, 80 Wis. 2d at 452. In 1983, the legislature amended Wis. Stat. § 108.04(10) to add the lockout exemption. 1983 Wis. Act 468, § 2. Prior to this amendment, this court commented that "sec. 108.04(10), as a disqualifying statute, does not contain an exemption for workers who lose their jobs because of a lockout, as do the statutes of many states." *De Leeuw v. DILHR*, 71 Wis. 2d 446, 452, 238 N.W.2d 706 (1976); *see also A.J. Sweet v. Industrial Comm'n*, 16 Wis. 2d 98, 104, 114 N.W.2d 853 (1962). On January 27, 1983, a group of Assembly Representatives introduced 1983 Assembly Bill 58. This bill was to renumber and amend Wis. Stat. § 108.04(10) and create § 108.04(10)(c), now subsection (d). 1983 A.B. 58.

¶ 26. The Senate proposed amendments to the bill. Senate Amendment 1 to 1983 Assembly Bill 58. Drafts of the Senate's proposed amendments indicate that the Senate considered adding to the phrase "of the employer," the phrase "or an allied employer." [Draft] Senate Amendment to 1983 A.B. 58. Had the legislature adopted the Senate's proposed amendments, the definition of lockout would have read:

"[L]ockout" means the barring of one or more employes from their employment in an establishment by an employer as a part of a labor dispute, which is not directly subsequent to a strike or other

[11] The legislative history for the 1983 amendment to Wis. Stat. § 108.04(10) is sparse. It contains drafting documents, the proposed bill and the final act. There is also a letter to the Wisconsin State AFL-CIO from an attorney that refers to the 1983 amendment, however, we do not consider it since it is neither from or to a member of the legislature. Nor is there any evidence that a member adopted the views expressed therein.

> job action of a labor union or group of employes of
> the employer *or allied employer.*

The proposed Senate amendment defined "allied employer" as "an employer which is jointly participating in collective bargaining with one or more other employers." *Id.* However, both of these proposed amendments were deleted from the final Senate Amendment. Senate Amendment 1 to 1983 A.B. 58. The final Senate Amendment was adopted, and the changes therein included in the final bill. 1983 Wis. Act 468; 1983 A.B. 58.

¶ 27. The draft Senate Amendment indicates that the legislature considered adopting the definition of employer that LIRC adopted, one that includes an employer jointly participating in collective bargaining with one or more other employers. However, the Senate rejected that definition. We cannot ignore this legislative history. We, too, reject an interpretation of the definition of employer that includes an allied employer. We should not read into the statute language that the legislature did not put in. *In the Interest of G. & L.P.,* 119 Wis. 2d 349, 354, 349 N.W.2d 743 (1984).

¶ 28. From the legislative history we glean that the legislature intended that the phrase "of the employer" in Wis. Stat. § 108.04(10)(d) does not include an employer joined or associated with another for the purpose of collective bargaining. Applying the intended meaning of "employer" here, we find that Illingworth's conduct constituted a statutory lockout. It is not disputed that Illingworth barred one or more employees from their employment as part of a labor dispute. Wis. Stat. § 108.04(10)(d). There is also no dispute that Illingworth's "barring. . .of employes" took place at the employer's establishment, Illingworth's Milwaukee facility. *Id.* Illingworth's conduct, however, was *not*

directly subsequent to a strike or other job action by Local 18 directed at Illingworth as an employer. *Id.* The employees did not strike Illingworth or take any other job action. The initial and only job action between Illingworth and the Petitioners-Respondents was Illingworth's lockout. Illingworth's lockout thus entitles employees to unemployment compensation benefits. Wis. Stat. § 108.04(10)(a).

¶ 29.   Both LIRC and Illingworth repeatedly contend that Wis. Stat. § 108.04(10) excludes, to use their term, "defensive lockouts."[12] Their definition of a "defensive lockout" is inextricable from their characterization of Local 18's strike as a whipsaw strike, i.e., the strike at CS&E was something that Illingworth had to defend against because it was going to be the next target of a strike. However, Wis. Stat. § 108.04(10)(d) makes no such distinction, but excludes those lockouts that are "directly subsequent to a strike or other job action" by the employer's labor union. The key is that for the lockout to be excluded, it must be in response to a strike or job action against the employer; a strike against multi-employer bargaining unit does not qualify for the exclusion.

¶ 30.   Illingworth relies upon *A.J. Sweet,* 16 Wis. 2d 98, to contend that associated employers that engage in a lockout should be considered a single employer. Two important facts distinguish *A.J. Sweet.* One, it was "conceded that a labor dispute was in progress between the union and the five plaintiff

---

[12] LIRC justifies its interpretation by contending that Illingworth acted legally and appropriately because its lockout was in response to a whipsaw strike. Whether or not Illingworth acted legally or appropriately under federal labor law is not the issue here. The issue is instead Petitioners-Respondents' eligibility for benefits under Wis. Stat. § 108.04(10).

employers." *Id.* at 105. Here, Petitioners-Respondents have repeatedly contended that there was no labor dispute between Illingworth and them. Two, *A.J. Sweet* was decided more than 20 years before the legislature amended Wis. Stat. § 108.04(10) to exempt lockouts from labor disputes that would otherwise disqualify employees from obtaining unemployment benefits.

¶ 31. The only case we have found instructive is *Kentucky Unemployment Insurance Commission v. Louisville Builders*, 351 S.W.2d 157 (Ky. Ct. App. 1961) (*Louisville Builders*). In *Louisville Builders*, the situation was strikingly similar: employers associated for the purpose of collective bargaining locked out employees when the employees' union struck one of the employers. *Id.* at 159–160. The locked-out employees applied for unemployment compensation and were awarded it according to a Kentucky statute that exempts lockouts from the strike/bona fide labor dispute disqualification of unemployment benefits. *Id.* at 159. Kentucky's statute is substantially similar to Wis. Stat. § 108.04(10).[13] *Id.* The employers argued there, as Illingworth argues here, that the strike against one was a strike against all. *Id.* at 160. The court found that while the lockout "grew out of the labor dispute [that] was initiated by the strike," the employees there that were locked out had not gone out on strike. *Id.* at 161. The court also found that the legislature intended to limit the lockout statute and it did not extend to employers associated for collective bargaining and thus upheld the award of benefits to the employees. *Id.* at

---

[13] The Wisconsin legislature has not so limited the lockout option for employers. Unlike Kentucky, Wisconsin excludes from the definition of a lockout an employer's lockout of employees that is "directly subsequent to a strike or other job action." Wis. Stat. § 108.04(10)(d).

161, 162. Similarly, we conclude that the legislature has so limited the lockout provision and that the Petitioners-Respondents are entitled to benefits.[14]

¶ 32. "Courts should also resolve statutory ambiguities so as to advance the legislature's basic purpose in enacting the legislation." *UFE, Inc.*, 201 Wis. 2d at 288. LIRC argues that its construction of lockout to include multi-employer bargaining units furthers the purpose of the statute because such lockouts are necessary to defend against whipsaw actions. We disagree and find that our interpretation furthers the legislative purpose underlying Wis. Stat. § 108.04(10).

¶ 33. The statutory purpose of Wis. Stat. § 108.04(10) is four-fold: (1) provide income support to unemployed workers (*De Leeuw*, 71 Wis. 2d at 450); (2)

---

[14] Since we have determined that Illingworth's lockout was a statutory lockout under Wis. Stat. § 108.04(10), we need not address Petitioners-Respondents' argument that they are also entitled to benefits because there was no "dispute. . .in active progress in the establishment in which the employe is or was employed." Wis. Stat. § 108.04(10)(a). For that reason, we do not address the "establishment" analysis in *Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 204 N.W.2d 457 (1973). Moreover, *Liberty Trucking* did not involve multiple employers claiming to be associated and therefore should be considered a single employer. Instead, that case involved single employers that had multiple work sites and whose cases had been joined to argue together on appeal. *Id.* at 333. Here, the contention would be that Illingworth and CS&E are to be considered a single employer even though, as LIRC found, they have separate ownership and management, they operate out of separate facilities and specialize in different products. In short, they are "totally separate businesses." Unemployment Compensation Decision, Hearing No. 96606892MWG (Aug. 20, 1997) (R. at 19:10). Consequently, *Liberty Trucking* would be inapposite to any establishment analysis.

protect employers from financing a strike against themselves; (3) preserve the status quo during a labor dispute (*Marathon Elec. Mfg. Corp. v. Industrial Comm'n,* 269 Wis. 394, 408, 69 N.W. 573 (1955); and (4) maintain neutrality during labor disputes (*Jenks,* 107 Wis. 2d at 725).

¶ 34.  LIRC's interpretation would allow employers to lockout employees who are not striking against them. These employees would have no income support even though they are not involved in a labor dispute with their employer. In contrast, our interpretation provides income support to employees locked out by an employer against whom they have not struck or targeted with a job action. Our interpretation maintains the status quo and neutrality during a labor dispute because benefits are not paid if the employer locks out the employees in response to a strike or other job action against the employer. It does not pull employees into other labor disputes.

¶ 35.  "In recognizing that a purpose of the disqualifying section 108.04(10), was to prevent an employer from financing a strike against himself. . .decisions have at least implied that the employee or the employer must be directly involved in the dispute." *Kenneth F. Sullivan Co. v. Industrial Comm'n,* 25 Wis. 2d 84, 88, 130 N.W.2d 194 (1964). LIRC's interpretation would have the employer escape paying unemployment benefits even though the employer locked out employees with whom there is not a direct dispute.

¶ 36.  LIRC's interpretation did not promote either consistency or uniformity in the application of Wis. Stat. § 108.04(10). Its interpretation turned on whether a lockout was a defensive lockout in response to a whipsaw strike. It involved imputing intent to a

strike where there is no evidence of such. Unemployment Compensation Decision, Hearing No. 96606892MWG (Aug. 20, 1997) (R. at 19:10). Our interpretation looks to the conduct between the employer and employee and does not involve divining the intent of a strike against another employer.

■

¶ 37.   In summary, we conclude that, giving due weight deference to LIRC, our interpretation of the lockout provision of Wis. Stat. § 108.04(10) is more reasonable than LIRC's. It reflects the intent of the legislature, evident from the legislative history and the statutory purpose. Given our construction of the lockout provision of Wis. Stat. § 108.04(10), we also conclude that Illingworth has not, and cannot, meet its burden of proving that Petitioners-Respondents are disqualified from unemployment compensation benefits for the time Illingworth locked them out. Illingworth's lockout was a statutory lockout. Thus, we affirm the decision and order of the circuit court that reviewed and reversed LIRC's Unemployment Compensation Decision in favor of Illingworth.

*By the Court.*—The order of the circuit court is affirmed.